AUTOMATIC PENCIL SHARPENER CO. v. STEWART MFG. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1918.)

No. 2493.

1. PATENTS ⬤⟳328—VALIDITY—INVENTION.
    Webster patent, No. 640,846, for a pencil sharpener containing a cutter with spiral blades, held valid.

2. PATENTS ⬤⟳81—INVALIDITY—SUBSEQUENT PATENT.
    A patent is not open to attack because the invention was disclosed in a patent subsequently issued, where there was no clear showing of prior use of the device last patented.

3. PATENTS ⬤⟳328—INFRINGEMENT—WHAT CONSTITUTES.
    Webster patent, No. 640,846, for a pencil sharpener containing a cutter provided with spiral blades, held infringed by defendant's device.

4. PATENTS ⬤⟳328—INFRINGEMENT—WHAT CONSTITUTES.
    The Webster patent, No. 810,104, for a pencil sharpener provided with bearings at opposite ends of the frame, held not infringed by defendant's device.

5. PATENTS ⬤⟳328—INFRINGEMENT—WHAT CONSTITUTES.
    The Baines patent, No. 839,806, for a pencil sharpener having an adjustable stop in the frame, held not infringed by defendant's device.

6. TRADE-MARKS AND TRADE-NAMES ⬤⟳59(1)—INFRINGEMENT—"JUNIOR."
    Though complainant registered a trade-mark "Junior" for a pencil sharpener, it was no infringement of the same for defendant, who previously sold pencil sharpeners under the name "Stewart," to offer to the trade smaller pencil sharpeners under the name of "Stewart Junior," for the word "Junior," with respect to merchandise, signifies a more recent product, or a smaller type or model.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Junior.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bill by the Automatic Pencil Sharpener Company against the Stewart Manufacturing Company, a corporation, and another. From a decree dismissing the bill, complainant appeals. Reversed, with directions.

From a decree dismissing appellant's bill to enjoin future infringement of Webster patents, No. 640,846 and No. 819,104, and Baines patent, No. 839,806, for pencil sharpeners, and for damages arising out of past infringements, and also for an injunction against alleged unfair trade competition with relation to appellant's registered trade-mark "Junior" for pencil sharpeners, this appeal is taken. Claims 4 and 5 of the Webster patent No. 640,846, dated January 9, 1900, read as follows:

"4. In a pencil sharpener, a cutter provided with spiral blades, said cutter being mounted upon an axle upon the opposite end of which is a pinion, an internal gear secured to the stationary casing, and with which said pinion meshes, said axle being mounted in a bearing which is mounted upon a second axle, a crank secured to said second axle, and a block secured upon said second axle adjacent to said cutter, and provided with a conical groove adapted to receive a pencil and direct and hold the same against the said cutter, substantially as and for the purpose set forth.

"5. In a pencil sharpener, a shaft or axle *13*, internal gear *21*, block *16* and hub *17* mounted on said axle, an axle *19* mounted in said hub and carrying pinion *20*, cutter *23* mounted on axle *19*, said block *16* being provided with the conical groove *25*, substantially as and for the purpose set forth."

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Claims 1 and 3 of the Webster patent, No. 819,104, issued May 1, 1906, read as follows:

"1. In a pencil sharpener, the combination of the frame comprising the disks 9 and 10 with the block 11 connecting the same, bearings at opposite ends of the frame, a crank for rotating the same, bearings 19 and 20 in the said disks at an angle to the disks, the shaft 18 fitted to the said bearings, the sharpening cylinder 16 carried by the said shaft and gearing arranged and operated to rotate the sharpening cylinder when the frame is turned by the crank."

"3. In a pencil sharpener, the combination of the frame comprising the disks 9 and 10 with the block 11 connecting the same, a casing provided with bearings for the opposite ends of the frame and having a box 48 to receive the shavings, a crank for rotating the frame in the casing, bearings 19 and 20 in the said disks at an angle to the axis of the disks, the shaft 18 fitted to the said bearings, the sharpening cylinder 16 carried by said shaft and gearing arranged and operated to rotate the sharpening cylinder when the frame is turned by the hand crank."

Claims 8 and 10 of the Baines patent, No. 839,806, issued January 1, 1907, read as follows:

"8. In a pencil-sharpening machine a cutter cylindrical in form and having helically arranged cutting edges, a frame mounted to rotate in a stand or casing and carrying the cutter at an angle with the axis about which said frame rotates, a guide for the pencil in the axis of said frame, an adjustable stop in the frame to limit the longitudinal movement of the pencil, and means to rotate the said cutter and give it a planetary motion."

"10. In a pencil-sharpening machine the combination of a rotary device provided with helically arranged cutting edges, means for imparting both a rotary and planetary motion thereto, and of an adjustable stop carried by the frame to limit the longitudinal movement of the pencil."

The foregoing are the only claims involved in this suit. Defenses are noninfringement and invalidity.

Henry M. Huxley, of Chicago, Ill., for appellant.
Chas. S. Burton, of Chicago, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge (after stating the fact as above). [1] *Webster First Patent, No. 640,846.*—Of the nine elements which comprise the sharpener defined in claim 4, quoted above, the element described as "a cutter provided with spiral blades" is claimed to be unique, and when used in the combination set forth in this claim constitutes the basis for one of the contributions which Webster made to this art. The patentee emphasized this element in his specifications by saying:

"On the free end of the shaft I mount a cutter which in shape is a frustum of a cone and is provided with a plurality of spiral blades and the block (16) is provided on the side adjacent to the cutter with a conical shaped groove, which is adapted to receive the end of a pencil and sustain and direct the same against the cutter, as will be readily understood by an inspection of the drawings. * * * It will be observed that the blades on the cutter are made spiral and so disposed that as the cutter is rotated the cutting will be from the point of the pencil backward, thereby giving a fine, long point, without breaking the lead."

The block and the mechanism for rotating the cutter and the block about the pencil supply the means for utilizing the spiral bladed cutter. The advantages of providing a cutter so that each sharpening spiral blade performs a progressive shaving action, beginning at the

point of the lead and moving backward, over a cutter that scrapes like a file, is so obvious that, in the absence of any disclosure in the prior art, invention is apparent. Appellant produced a pencil sharpener which for the first time sharpened the pencil from the point back. This machine, by means of the spiral blades, cut thin shavings along the wood and avoided the difficulties that were met in case a file were used.

Appellees, however, contend that the prior art, represented by two patents, one to Rice, No. 230,338, granted July 28, 1880, and one to Hoffman, No. 291,597, granted January 7, 1884, anticipated appellant's invention. The Hoffman patent is but an improvement of the Rice patent. Hoffman, in his specifications, says:

"My improvement has been designed with special reference to the needs of the pencil sharpener described in letters patent No. 230,338, * * * and it is in this connection that I have illustrated it in the accompanying drawings, * * * and parts thus far described are substantially the same in construction and operation as those described in letters patent No. 230,338, above referred to, and require no further description here."

The contribution to the art made by Rice and Hoffman was chiefly in the use of a rotary file, which both patentees used to point the lead in the pencil. Neither patent provided for the use of its rotary file to cut the wood. Had such a file been provided, it would have soon become clogged with grains of wood and would not have performed its work. Appellant's sharpener is distinguished from both the Rice and Hoffman devices in two important respects. It cut the lead and the wood at the same time, avoiding the consequences that would result in case a file were applied to the wood. A sharpener was also provided wherein the sharpening began at the point of the pencil and worked back. The new features of appellant's sharpener were not disclosed by either the Hoffman or the Rice patents.

[2] Appellant contends that the Eager patent, No. 648,900, May 1, 1900, described an invention having a cutter of the milling tool type and so mounted with respect to the pencil seat as to rotate in the proper direction to cut back from the point of the pencil in the same manner as the cutter of the Webster patent. This patent, however, was issued subsequent to the date of the patent under consideration, and the evidence as to any prior use of such machine is too meager and unsatisfactory to justify us in upsetting appellant's patent on that ground. While the Eager machine is distinguishable from the machine described in Webster's first patent in other respects, it is not necessary, in view of the dates of issuance of the two patents, to point out the distinguishing features.

We conclude claims 4 and 5 of the Webster first patent are valid. The latter claim is sustained, in view of this discussion, without further elaboration.

[3] *Noninfringement.*—Appellees urge that no infringement of this patent is disclosed, because in its cutter the third element in this claim, No. 4, a pinion, must be located upon the opposite end of the "axle," which is the second element of the claim. It does not seem to us that the location of the pinion is a necessary or an essential part of this

third element. In the particular drawing to which reference was made, it is true the pinion was located at the opposite end of the axle; but the location of the pinion was not the essence of the element so described. The claim, fairly construed in the light of the drawings and specifications, does not warrant the limitation or restriction which appellees attempt to place upon the location of the pinion.

[4] *Webster Second Patent, No. 819,104—Noninfringement.*—In both claims 1 and 3 of this patent there appears an element described in claim 1 as "bearings at opposite ends of the frame" and in claim 3 as "a case provided with bearings for the opposite ends of the frame," and it is contended that appellees' sharpener is not provided with such "bearings at the opposite ends of the frame." We have examined the appellees' sharpener in vain for the two bearings at the opposite ends. It is clear that appellees' sharpener carries the rotor on its journal bearing at one end of the journal only. True, at the other end there is provided a sleeve occasionally used for a smaller sized pencil, and when so used it serves somewhat as a bearing. We are convinced, however, that appellees' sharpener does not infringe either claim for want of this element above referred to.

[5] *Baines Patent—Noninfringement.*—Appellees further contend that their sharpener does not infringe the Baines patent, No. 839,806, because it does not possess that element found in claims 8 and 10 described as "an adjustable stop in the frame to limit the longitudinal movement of the pencil." Appellees' sharpener is provided with a stop, but it is not an adjustable stop. Its stop is attached to the frame and firmly secured thereto by means of two screws. Appellant's contention is that this stop is adjustable, because it can be removed, and, when turned over, it will occupy a somewhat different position, and thereby becomes adjustable. In other words, it is possible that this stop may be put into two positions, in one of which the pencil is sharpened to a finer point than in the other. Ignoring the fact that it is impracticable to remove the stop and change ends, we do not believe that, if such change is made, adjustability is thereby secured. The word "adjustable" in this claim must be construed in the light of the mechanism to which it is applied. An adjustable stop in a pencil sharpener is a stop that may be so adjusted as to permit the pencil to be sharpened to various degrees of pointedness. Appellant's stop is more in the nature of a fixed stop. It is firmly secured to the frame. We conclude no infringement of this patent appears.

[6] *Trade-Mark "Junior."*—It is further contended that the court erred in refusing an injunction to restrain appellees from using the words "Stewart Junior," because of appellant's trade-mark of the word "Junior." Appellees have at least two pencil sharpeners upon the market. One is known as the "Stewart Junior." The word "Stewart," as written, is a fac simile of the signature of Mr. Stewart, and the word "Junior" appears in smaller type in Roman letters, and immediately beneath the word "Stewart." Appellees deny appellant's right to a trade-mark on the word "Junior," when applied to a manufactured article such as here under consideration. There is much force in their argument. The word "Junior," especially as applied to a man-

ufactured article, has a well-known meaning. It indicates the later or more recent product, or a smaller type or model of a machine that has been on the market. In the present case, it appears from the exhibits that appellee's "Junior" is a later and a smaller type of sharpener than was previously manufactured by it.

We conclude appellees were within their rights in so using the word "Junior" in connection with the word "Stewart," and in view of the fact that a similar and larger model of this same sharpener, bearing the name "Stewart" written in the same manner, was in use when the later and smaller model by the same company was placed upon the market. While Webster's patent No. 640,846 has now expired, this suit was instituted some time prior to the expiration of the patent. We therefore conclude that appellant is entitled to an accounting for infringement of this patent prior to its expiration.

The decree is reversed with costs, with directions to enter a decree in favor of appellant for an accounting for infringements of patent No. 640,846.